1  BRIAN J. STRETCH (CABN 163973)
   Acting United States Attorney
2
   DAVID R. CALLAWAY (CABN 121782)
3  Chief, Criminal Division

4  ANDREW S. HUANG (CABN 193730)
   Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California 94102-3495
        Telephone: (415) 436-7200
7       FAX: (415) 436-7234
        andrew.huang@usdoj.gov
8
   Attorneys for United States of America
9

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 15-00149 HSG |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | Sentencing Date: March 28, 2016 |
| HUGO JOHN SCHERZBERG, | Sentencing Time: 2:00 p.m. |
| Defendant. | Hon. Haywood S. Gilliam, Jr. |

**I.     INTRODUCTION**

The United States of America, by and through undersigned counsel, hereby requests that the Court sentence defendant Hugo John Scherzberg in a manner consistent with the parties' Plea Agreement: 41 months imprisonment, which is at the low-end of the defendant's Guidelines range, a three-year term of supervised release, no fine, and a $100 special assessment. The government also requests that the defendant be ordered to pay the victim church and its insurance company $1,000 and $490,940.99, respectively, in restitution.

U.S. SENT. MEM.
CR 15-00149 HSG

## II.   FACTUAL BACKGROUND[1]

On the morning of March 20, 2010, defendant Scherzberg left his Concord home with a single goal: to set fire to the Church of the Living God (C.W.F.F.) building in Pittsburg, California. He had "scoped out" the church the previous day, selecting the church specifically because it had the word "God" in its name and because the church would be easier than other churches to access (*i.e.*, approach and leave). *See* Exh. 3 (Excerpts of Interview of Defendant, November 25, 2014) at 4-5. When he arrived at the church just before 9:00 a.m., he pulled from his car the gas can he had filled earlier and the rock he had collected the day before for this purpose. *See id.* at 3, 19-20. He proceeded to break a side window with the rock, pour gasoline through the broken window, and ignite the church with a lighter had had brought. *See id.* at 13-14. He jumped back as the flames, undoubtedly intensified by the accelerant being used, singed his arm and face. *See id.* at 14. He hurried into his car and left the scene. In his wake, a fire raged, destroying much of the church, causing at least $491,940.99 in property damage, displacing the two congregations that used the building for worship for many months, and leaving the church's congregants and community to wonder, "Why?"

Over four and a half years later, some answers were found when the defendant, after attempting unsuccessfully to report himself for his 2010 arson, set fire to the entry way of another church in San Francisco on November 23, 2014. Upon his arrest, the defendant submitted to law enforcement interviews and explained:

- In response to why he burned the church in 2014: "It's a hate crime. . . . It's just that I was dealt a poor hand in life and I burned down these houses of God." Exh.1 (Excerpts of Interview of Defendant, November 23, 2014) at 3.

- With respect to the 2010 fire: "It was you know purely a hate crime. I was a year into dialysis and you know, just life wasn't so grand. I was dealt a sh---y hand in life and that's my way of getting then [*sic*]. . . . I was getting back at God. . . . Burn down the house of God." Exh. 1 at 12.

---

[1] *See generally* Plea Agreement ¶ 2.

U.S. SENT. MEM.
CR 15-00149 HSG                                2

- As to the "deciding factors" for why he felt in 2014 like he had been "dealt a bad hand": "Well I'm in kidney failure and I have been for six years. My mother died and I inherited some money, but unfortunately, when that ran out I was evicted, so that pretty much dictated my decision." Exh. 2 (Excerpts of Interview of Defendant, November 24, 2014) at 4.
- "You know well unfortunately I was -- in life I was dealt a terrible hand. I mean I've got this plastic tube hanging out of my chest for the last six years and you know I mean it's -- the dialysis is killing me and I know it and it's just -- it was an act of anger and retaliation." Exh. 3 at 6.

The defendant did make clear, however, that his animus was targeted at no specific congregation or specific religion:

> I mean it's a house of God I realize you know I mean -- no matter what I did I was going to hurt these people who are owners and managers of this asset a piece of land and the church and the parishioners and the parish and there's no way around that. No matter what church I hit, no matter where I went, that was going to be the case and so that's just the unfortunate consequence of this. I mean it had nothing to do with the people or the room or the religion. I'm not a big fan of Christianity but that's secondary. Saying that, I also want to not[e] that I never would have hit a temple. I believe Judaism and Islam are far superior religions to Christianity and as a result, I never would have done those, but that's just a sidebar. Yeah it had nothing to do with the people. I don't know who goes there. I don't know anything about that particular religion. I've never done any research prior. It was just that name exclusively.

Exh. 3 at 28; *see also* Exh. 2 at 5-6.

A federal grand jury returned a two-count indictment against defendant Scherzberg on March 5, 2015, charging him in Count One with violating 18 U.S.C. § 247(a)(1) and (d)(3) (Damage to Religious Property by Means of Fire) and in Count Two with violating 18 U.S.C. § 844(i) (Arson of a Building Used in Interstate and Foreign Commerce). The charge in Count Two carries a mandatory minimum term of imprisonment of five years upon conviction. On March 5, 2016, pursuant to a plea agreement with the government, the defendant pleaded guilty to Count One.

### III. SENTENCING GUIDELINES

The government concurs with the Guidelines calculations contained in the PSR. The applicable Total Offense Level is 21. At Criminal History Category II, the resulting Guidelines range is 41 to 51 months imprisonment.

U.S. SENT. MEM.
CR 15-00149 HSG                        3

Under paragraph 7.a. of the Plea Agreement, the defendant agreed that his Guidelines range is appropriately calculated using U.S.S.G. § 2K1.4(a)(1)(B). Section § 2K1.4(a)(1)(B) provides application of Base Offense Level 24 to a broad range of potential arson targets:

> [I]f the offense . . . involved the destruction or attempted destruction of a dwelling, an airport, an aircraft, a mass transportation facility, a mass transportation vehicle, a maritime facility, a vessel, or a vessel's cargo, a public transportation system, a state or government facility, an infrastructure facility, or a **place of public use**.

(Emphasis added.) Application Note 1 of the Commentary directs us to 18 U.S.C. § 2332f(e)(6), which defines "place of public use" in a similarly broad manner:

> "[P]lace of public use" means those parts of **any building**, land, street, waterway, or other location that are accessible or open to members of the public, whether continuously, periodically, or occasionally, and encompasses any commercial, business, cultural, historical, educational, **religious**, governmental, entertainment, recreational, or similar place that is so accessible or open to the public; . . . .

(Emphases added.) The church building in the present case clearly qualifies as a place of public use under U.S.S.G. § 2K1.4(a)(1)(B) and 18 U.S.C. § 2332f(e)(6). It is a building and religious place, open and accessible to the public. Moreover, it fits squarely within the broad range of arson targets that the Sentencing Commission intended to qualify for a Base Offense Level 24. While this Guidelines provision contemplates application to larger targets (*e.g.*, airports, mass transportation facilities, or state or government facilities), it also encompasses targets that are likely smaller than the church here (*e.g.*, a vessel's cargo or a dwelling). *See also United States v. White*, 771 F.3d 225, 234-36 (4th Cir. 2014) (upholding application of § 2K1.4(a)(1)(B) to a vacant duplex as a "dwelling"); *United States v. Ingles*, 445 F.3d 830, 840 (5th Cir. 2006) (upholding application of § 2K1.4(a)(1)(B) to "a camp house that had a roof, walls, and furnishings, including a television, microwave, and several beds," which qualified as a dwelling despite multiple months of being unoccupied).

**IV.     CONSIDERATION OF FACTORS UNDER 18 U.S.C. § 3553(a)**

Title 18, United States Code, Section 3553(a) requires the Court "to impose a sentence sufficient, but not greater than necessary" to, *inter alia*, "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" in addition to protecting the public, affording adequate deterrence, and providing the defendant with necessary corrective treatment. In achieving a just sentence, a court is to consider these goals in addition to factors such as "the nature and

circumstances of the offense and the history and characteristics of the defendant." *Id.* The low-end, 41-month sentence agreed upon by the parties here is the minimally sufficient sentence necessary to achieve those goals.

The impact of the defendant's 2010 arson extends well beyond the mere burning of a building and destruction of property. This arson also represents a very real threat to one of our nation's great promises: the promise of religious liberty. The malicious, violent destruction of a place of worship requires punishment that reflects, in equal measure, the seriousness of the offense.

The uncontroverted evidence here indicates that the defendant acted out of anger towards God and not animus towards any particular individual, congregation, or religion. Notwithstanding this claim of limited motivation, the defendant chose a method of individualized expression that was dangerous, costly, and, perhaps most importantly, lasting in the fear it instilled among those in the community. Collateral consequences to others were completely foreseeable. The fear created was amplified and perpetuated as the crime went unsolved for several years. While the defendant's medical and financial issues may have led him to try confessing in 2014, his choice to commit a second arson in November 2014 when his attempted confessions went unheard suggest a level of dangerousness that necessitates a significant punishment. Put another way, other options besides arson were available to garner the authorities' attention and trigger the defendant's arrest.

The government recognizes that the defendant's crimes occurred against the backdrop of the multiple health issues, physical and otherwise, that the defendant faces and that these health issues both created, and were exacerbated by, homelessness and other difficulties. Given this background, a harsher punishment, such as the 60-month mandatory minimum available for a conviction under Count Two, would be inappropriate. However, a 41-month sentence appears to strike the right balance between reflecting the gravity of the defendant's crime, the need to promote deterrence and respect for the law, and to protect the public, *see* 18 U.S.C. § 3553(a)(2)(A), while taking into account the defendant's nature and characteristics and also affording him sufficient time to obtain the necessary "correctional treatment in the most effective manner," including medical treatment, mental health treatment, and any additional vocational or educational training, *see* 18 U.S.C. § 3553(a)(1) and (a)(2)(D).

## V. RESTITUTION AND COMPLIANCE WITH CRIME VICTIMS' RIGHTS ACT

Restitution is required when sentencing for a crime of violence and where victims suffer pecuniary losses. *See* 18 U.S.C. § 3663A. Here, the parties agreed to an order of restitution that represents the $490,940.99 paid by the victim church's insurance company and the $1,000 deductible that the victim church paid. *See* Plea Agreement ¶ 9.

Pursuant to the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771(a)(5), the victims in this case have been afforded multiple opportunities before and throughout the pendency of this case to exercise their "reasonable right to confer with the attorney for the Government in the case." This was accomplished largely through in-person meetings with the victim church and submissions from the church's insurance company. Based on evidence gathered during the government's investigation and submissions received by the government through its compliance with the CVRA, the $491,940.99 restitution agreed upon in the plea agreement is the correct amount.

## VI. CONCLUSION

For the reasons stated herein, the government requests that the Court sentence the defendant as follows: 41 months imprisonment, 3 years of supervised release, no fine, and a $100 special assessment. The government also requests that the defendant be ordered to pay the victims $491,940.99 total in a manner consistent with paragraph 9 of the Plea Agreement.

DATED: March 21, 2016

Respectfully submitted,

BRIAN J. STRETCH
Acting United States Attorney

   /s/
ANDREW S. HUANG
Assistant United States Attorney